Jeffrey W. Herrmann, Esq.
COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP
Park 80 West-Plaza One
250 Pehle Avenue | Suite 401
Saddle Brook, New Jersey 07663
Phone: (201) 845-9600
jwh@njlawfirm.com

Attorneys for Plaintiffs

and

Carl L. Stine, Esq.
Fei-Lu Qian, Esq.
WOLF POPPER LLP
845 Third Avenue
New York, New York 10022
Tel.: 212-759-4600
Email: cstine@wolfpopper.com
       fqian@wolfpopper.com

Of Counsel

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ALEXANDER RASMUSSEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PINNACLE FOODS INC., ROGER DEROMEDI, MARK CLOUSE, ANN FANDOZZI, MARK JUNG, JANE NIELSEN, MUKTESH PANT, RAYMOND P. SILCOCK, and IOANNIS SKOUFALOS,<br><br>Defendants. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiff, Alexander Rasmussen ("Plaintiff"), residing at 102 S. Tunstall Ave., Apex, NC 27502, individually and as representative of all similarly situated, by and through his attorneys, Cohn Lifland Pearlman Herrmann & Knopf LLP and Wolf Popper LLP, by and through his attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This action stems from a proposed transaction (the "Proposed Transaction" or "Merger") announced on June 27, 2018, pursuant to which Pinnacle Foods Inc. ("Pinnacle" or the "Company") will be acquired by Conagra Brands, Inc. ("Conagra") through its wholly owned subsidiary, Patriot Merger Sub Inc. ("Merger Sub").

2. On June 27, 2018, the Company's Board of Directors (the "Board" or the "Individual Defendants") caused the Company to enter into an Agreement and Plan of Merger (the "Merger Agreement") with Merger Sub. Pursuant to the terms of the Merger Agreement, Merger Sub will purchase each issued and outstanding share of Pinnacle common stock in a cash and stock transaction valued at approximately $10.9 billion. Under the terms of the Proposed Transaction, Pinnacle shareholders will receive $43.11 per share in cash and 0.6494 shares of Conagra common stock for each share of Pinnacle held (the "Merger Consideration"). The implied offer price per share of the Merger Consideration is $68.00 per Pinnacle share. Upon completion of the Merger, Merger Sub will merge with and into Pinnacle, with Pinnacle surviving the merger as a wholly owned subsidiary of Conagra.

3. On July 25, 2018, Defendants (as defined below) filed a preliminary proxy statement on Form S-4 (the "Proxy") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction. As described herein, the Proxy omits

certain material information with respect to the Proposed Transaction, which renders it false and misleading, in violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 140.14a-9 ("Rule 14a-9") promulgated thereunder.

4. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from Defendants' wrongdoing described herein.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is an individual who resides at 102 S. Tunstall Ave., Apex, NC 27502, and has been at all times relevant hereto, an owner of Pinnacle common stock.

9. Defendant Pinnacle is a Delaware corporation, with its principal executive offices located at 399 Jefferson Road, Parsippany, New Jersey 07054. Pinnacle common stock is listed on the New York Stock Exchange ("NYSE") under the symbol "PF."

10. Defendant Roger Deromedi ("Deromedi") has served as a member of the Company's Board since 2007, and was appointed Independent Chairman and Lead Director in March 2016. Deromedi's tenure on Pinnacle's Board includes serving as Non-Executive Chairman of the Board from 2009 to March 2016, as a member of the Compensation Committee from 2009 to September 2015, and as Executive Chairman of the Board from 2007 to 2009.

11. Defendant Mark Clouse ("Clouse") was named Chief Executive Officer and director of the Board in May 2016.

12. Defendant Ann Fandozzi ("Fandozzi") has served as a Board member since 2012.

13. Defendant Mark Jung ("Jung") has served as a Board member since 2015.

14. Defendant Jane Nielsen ("Nielsen") has served as a Board member since 2014.

15. Defendant Muktesh Pant ("Pant") has served as a Board member since 2014.

16. Defendant Raymond P. Silcock ("Silcock") has served as a Board member since 2008.

17. Defendant Ioannis Skoufalos ("Skoufalos") has served as a Board member since September 2015.

18. The defendants listed in ¶¶ 10-17 are collectively referred to herein as the "Individual Defendants."

19. The Individual Defendants and Pinnacle are referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**

20. According to the Company's Form 10-K for the year ended December 31, 2017, Pinnacle is "a leading manufacturer, marketer and distributor of high-quality, branded food

4

products in North America, with annual net sales of approximately $3.1 billion in fiscal 2017." The Company's "products can be found in over 85% of U.S. households" and "sold through supermarkets, grocery wholesalers and distributors, mass merchandisers, super centers, convenience stores, dollar stores, natural and organic food stores, drug stores, e-commerce websites and warehouse clubs in the United States and Canada, as well as in military channels and foodservice locations."

21.     On June 27, 2018, Pinnacle and Conagra issued a press release announcing that they had entered into a definitive agreement where Pinnacle will be acquired by Conagra in a cash and stock transaction. Specifically, Pinnacle shareholders will receive $43.11 per share in cash (63.4%) and 0.6494 shares of Conagra common stock (36.6%) for each share of Pinnacle held, valuing the Proposed Transaction at $10.9 billion. The implied offer price per share of the Merger Consideration is $68.00 per Pinnacle share. The press release further stated, in relevant part, the following:

> Under the terms of the transaction, Pinnacle Foods shareholders will receive $43.11 per share in cash and 0.6494 shares of Conagra Brands common stock for each share of Pinnacle Foods held. The implied price of $68.00 per Pinnacle Foods share is based on the volume-weighted average price of Conagra Brands' stock for the five days ended June 21, 2018. The purchase price reflects an adjusted EBITDA multiple of 15.8x, based on Pinnacle Foods' estimated fiscal year 2018 results excluding synergies, and 12.1x adjusted EBITDA including run-rate cost synergies.
>
> The combination of two growing portfolios of iconic brands will serve as a catalyst to accelerate value creation for shareholders. The transaction will enhance Conagra Brands' multi-year transformation plan and expand its presence and capabilities in its most strategic categories, including frozen foods and snacks. With annual net sales in excess of $3 billion, Pinnacle Foods' portfolio of frozen, refrigerated and shelf-stable products includes such well-known brands as Birds Eye, Duncan Hines, Earth Balance, EVOL, Erin's, Gardein, Glutino, Hawaiian Kettle Style Potato Chips, Hungry-Man, Log Cabin, Tim's Cascade Snacks, Udi's, Vlasic and Wish-Bone, among others. Based on both companies' latest fiscal year results, pro forma net sales would have been approximately $11 billion.

"The acquisition of Pinnacle Foods is an exciting next step for Conagra Brands. After three years of transformative work to create a pure-play, branded food company, we are well-positioned to accelerate the next wave of change," said Sean Connolly, president and chief executive officer of Conagra Brands. "The addition of Pinnacle Foods' leading brands in the attractive frozen foods and snacks categories will create a tremendous opportunity for us to further leverage our proven innovation approach, brand-building capabilities, and deep customer relationships. With greater scale across leading, iconic brands, an unwavering focus on driving profitable growth, and a strong balance sheet and cash flow, we are creating a tremendous platform to drive meaningful shareholder value."

"Today's transaction provides Pinnacle Foods shareholders with substantial and immediate value, as well as the opportunity to participate in the significant upside potential of the combined company," said Pinnacle Foods chief executive officer Mark Clouse. "Because of our employees' incredible work, Pinnacle's total shareholder return is approximately 275 percent since our IPO, and today marks an important milestone in the company's journey. The portfolios and capabilities of both enterprises are impressive and complementary. We look forward to working through a seamless transition with the Conagra Brands team."

**Compelling Strategic and Financial Benefits**
- **Complementary Portfolio of Iconic Brands:** The combined company will have a portfolio of leading, iconic brands within attractive domains such as frozen & refrigerated meals and snacks & sweet treats.
- **Enhanced Ability to Capitalize on Trends in Frozen Foods:** The combination will bring together complementary portfolios in the large, growing and on-trend frozen foods category, positioning the combined company to accelerate innovation and benefit from long-term tailwinds.
- **Compelling Growth Profile:** Conagra Brands and Pinnacle Foods are two of the fastest-growing companies in the consumer packaged foods industry by consumption, and Conagra Brands expects continued momentum based on the enhanced scale and new opportunities to partner with customers that the transaction will provide.
- **EPS Accretive:** On a percentage basis, Conagra Brands expects the transaction to be low single-digit accretive to adjusted EPS in the fiscal year ended May 2020 and high single-digit accretive to adjusted EPS in the fiscal year ended May 2022.
- **Significant Synergy Opportunities:** Conagra Brands expects to achieve approximately $215 million in annual run-rate cost synergies by the end of fiscal year 2022, with one-time cash costs to achieve the synergies estimated at approximately $355 million, inclusive of expected capital expenditures of approximately $150 million.
- **Financing Maintains Solid Investment Grade Credit Rating and Dividend Rate**: The transaction is expected to be financed by Conagra Brands equity issued to Pinnacle Foods shareholders, new transaction debt and incremental cash proceeds from a public equity offering and/or divestitures.

- **Proven Integration Capabilities**: In recent years, Conagra Brands has established a proven track record of executing strategic transactions. The two organizations share complementary portfolios, supply chains, and results-oriented cultures, which are expected to facilitate integration.

**Transaction Details**

Under the terms of the agreement, each share of Pinnacle Foods common stock will be converted into the right to receive $43.11 per share in cash and 0.6494 shares of Conagra Brands common stock.

Conagra Brands has secured $9.0 billion in fully committed bridge financing from affiliates of Goldman Sachs Group, Inc. ("Goldman Sachs"). The $10.9 billion purchase price is expected to be financed with $3.0 billion of Conagra Brands equity issued to Pinnacle Foods shareholders and $7.9 billion in cash consideration funded with $7.3 billion of transaction debt and approximately $600 million of incremental cash proceeds from a public equity offering and/or divestitures. On a pro forma basis, Pinnacle Foods shareholders are expected to own approximately 16% of the combined company, assuming issuance of the incremental equity to the public. Following the transaction, Conagra Brands' pro forma net debt-to-EBITDA ratio is expected to be approximately 5.0x. Conagra Brands is committed to maintaining a solid investment grade credit rating and targeting a debt-to-EBITDA ratio of 3.5x.

22.     The $68.00 per share cash and stock offer price has only a 0.2% premium to Pinnacle's closing price of $67.86 on June 26, 2018.  Also, the $68.00 per share cash and stock offer price is significantly below the price target of $72.00 per share for Pinnacle on May 8, 2018 by Akshay Jagdale of Jefferies.

23.     In soliciting shareholder approval for the Proposed Transaction, the Company filed the Proxy on July 25, 2018, which purports to contain a summary/overview of the Proposed Transaction, but omits certain critical information, rendering portions of the Proxy materially incomplete and/or misleading, in violation of the Exchange Act provisions discussed herein.  As a result, Pinnacle shareholders lack material information necessary to allow them to make an informed decision concerning whether to vote in favor of the Merger.

24.     In particular, the Proxy contains materially incomplete and/or misleading information concerning, *inter alia*: the financial analyses performed by the Company's financial

advisors, Evercore Group L.L.C. ("Evercore") and Credit Suisse Securities (USA) LLC ("Credit Suisse"), in support of their fairness opinions. As part of Evercore's fairness opinion, Evercore reviewed, among other things, "certain non-public projected financial data relating to the Company prepared by management and furnished to us by the management of the Company." Proxy at B-1. As part of Credit Suisse's fairness opinion, Credit Suisse reviewed, among other things, "financial forecasts relating to the Company for five years ending December 31, 2022 prepared and provided by the management of the Company." Proxy at C-1.

25. The Proxy states that in rendering its fairness opinion, Evercore performed a *Selected Public Company Trading Analysis* by reviewing and comparing "certain financial information regarding Pinnacle to corresponding financial multiples and ratios" for seven selected publicly traded companies and three selected companies in the packaged food industry. Evercore "calculated the closing share prices as of June 25, 2018 (and also, in the case of Pinnacle, as of April 19, 2018) as a multiple of estimated earnings per share ('EPS') for calendar years 2018 and 2019." Proxy at 82. However, the Proxy fails to disclose Pinnacle's projected earnings per share for 2018 and 2019. Furthermore, the implied valuations based on these undisclosed projected earnings per share included a $0.24 per share addition to reflect Pinnacle's tax net operating losses ("NOLs"), however the Proxy fails to disclose these NOLs. The Proxy also fails to disclose the inputs used to calculate the weighted average cost of capital ("WACC") that was used in the NOL calculation.

26. Evercore also "performed a discounted cash flow analysis ("DCF") "to calculate ranges of implied present values per share of Pinnacle common stock as of June 30, 2018." While Evercore's DCF was based on Pinnacle's projected unlevered free cash flow, it fails to disclose any line item detail for that unlevered free cash flow. They should have disclosed these line items,

including projected EBIT, cash taxes, depreciation, amortization, capital expenditures, and any changes in working capital, so that shareholders can make their own determination as to the reliability of this valuation methodology. Also, while the Proxy does disclose that Evercore utilized "an assumed perpetuity growth rate range of 2.0% to 2.5%," the DCF analysis fails to disclose the basis for this range. In addition, the Proxy states that Evercore's discount rates ranging from 7.0% to 7.5% "were based on Evercore's estimated range of Pinnacle's weighted average cost of capital," but the Proxy fails to disclose the inputs used to calculate the WACC. Proxy at 84. While Pinnacle's NOLs were incorporated into the analysis, the Proxy also fails to disclose Pinnacle's NOLs used in the analysis for the period from January 1, 2023 through December 31, 2027.

27. With respect to Evercore's *Illustrative Present Value of Future Share Price Analysis* which was done for informational purposes, Evercore "derived a range of potential illustrative future prices per share for Pinnacle as of the end of Pinnacle's 2021 fiscal year" by performing "a present value of illustrative future share price analysis of Pinnacle based on the 2018 Management Case." However, the Proxy fails to disclose Pinnacle's projected earnings per share for this period. Proxy at 85.

28. With respect to Evercore's *Equity Research Analyst Price Targets* which was done for informational purposes, the Proxy fails to disclose the names of the research firms and their respective price targets. Proxy at 86. While the Company's shareholders could, potentially, do research on their own to determine this information, the shareholders should not have to undertake this significant project merely to obtain this material information, which the Company already has readily available.

29. With respect to the *Selected Companies Analysis* performed by Credit Suisse, it reviewed certain financial data including estimates for price and earnings multiples for 2018 and 2019 for Pinnacle and ten selected companies. However, again, the Proxy fails to disclose Pinnacle's projected earnings per share for 2018 and 2019. Proxy at 90-91.

30. With respect to Credit Suisse's *Discounted Cash Flow Analysis*, the analysis was based on Pinnacle's unlevered free cash flows for the nine months ended December 31, 2018 through December 31, 2022. Again, the Proxy fails to disclose any line item detail for unlevered free cash flow. Also, the Proxy fails to disclose any information about the inputs that were used to calculate the discount rates ranges of 6.0% to 7.0%. While Pinnacle's NOLs were incorporated into the analysis, the Proxy fails to disclose Pinnacle's annual figures used in the analysis. Proxy at 92.

31. The single analysis performed by either financial advisor with respect to Conagra was a selected companies analysis performed by Credit Suisse. Beyond this single analysis, the Proxy fails to disclose whether other analyses or valuations were performed by either financial advisor. Indeed, the Proxy fails to disclose whether Evercore performed any analyses or valuations with respect to Conagra in connection with this Proposed Transaction. If Evercore failed to perform any analyses, the Proxy should disclose affirmatively that analyses of Conagra were not performed by Evercore and explain as to why they were not done.

32. Given that 36.6% of the Merger Consideration is comprised of Conagra common stock, financial analyses as to the value of this Conagra's common stock would be material information necessary to allow Pinnacle shareholders to value Conagra's shares and to make an informed decision concerning whether to vote in favor of the Merger.

33. The non-disclosed information discussed above, would be material to Pinnacle shareholders in deciding how to vote their shares, as the real informative value of the financial advisor's work is not in its conclusion, but in the valuation analyses that buttress that result. When a financial advisor's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion, as well as the key multiples and range of multiples used in those analyses, must also be fairly disclosed.

34. Further, the non-disclosed information discussed above prevents shareholders from understanding the context of the figures or consider whether any of the inputs thereto or ranges derived therefrom are anomalous. Absent this information, Pinnacle shareholders are unable to determine whether the Proposed Transaction is indeed fair and in their best interest.

35. Without the foregoing material disclosures, Pinnacle shareholders are unable to fully understand and interpret financial analyses by Evercore and/or Credit Suisse or the fairness of the Merger Consideration when determining whether to vote in favor of the Proposed Transaction.

36. There are also material omissions in the Proxy concerning the Transaction Committee, which was formed by the Board on December 6, 2016 "to facilitate the Pinnacle board's review of prospective merger and acquisition transactions." Proxy at 64. The Proxy fails to disclose the names of the members of the Transaction Committee, or whether any of the members have any potential conflicts.

37. On March 20, 2017, Conagra made an unsolicited non-binding written proposal to Pinnacle to acquire it for $66.00 per share, "consisting of 60% cash and 40% newly issued Conagra common stock." The offer was rejected one week later after the Transaction Committee on March 23, 2017, concluded "that the proposal offered by Conagra significantly undervalued Pinnacle and

that Pinnacle's current stand-alone strategy (as well as incremental opportunities arising from potential acquisitions) would provide better growth opportunities for Pinnacle." Proxy at 64. However, the Proxy fails to disclose what role, if any, did the Transaction Committee played in the Proposed Transaction after the Transaction Committee concluded that Conagra's offer undervalued Pinnacle on March 23, 2017.

38. Without the foregoing material information, the Company's shareholders will not be able to fully understand and interpret the financial analyses, including their impact on the fairness of the Merger Consideration, when determining whether to vote in favor of the Proposed Transaction.

## CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Pinnacle (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

40. This action is properly maintainable as a class action for the following reasons:

a. The Class is so numerous that joinder of all members is impracticable. As of April 30, 2018, there were 119,171,745 shares of Pinnacle common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

b. Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) and 20(a) of the Exchange Act in connection with the Proposed Transaction; and (ii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Proxy as currently composed.

  c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

  d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

  e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

  f. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

  g. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## CAUSES OF ACTION

### COUNT I
### Claim for Violation of Section 14(a) of the Exchange Act
### and Rule 14a-9 Promulgated Thereunder
### (Against All Defendants)

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person . . . to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

43. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that solicitation communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9(a).

44. Rule 14a-9 further provides that, "[t]he fact that a proxy statement, form of proxy or other soliciting material has been filed with or examined by the Commission shall not be deemed a finding by the Commission that such material is accurate or complete or not false or misleading, or that the Commission has passed upon the merits of or approved any statement contained therein or any matter to be acted upon by security holders. No representation contrary to the foregoing shall be made." 17 C.F.R. § 240.14a-9(b).

45. As discussed herein, the Proxy misrepresents and/or omits material facts concerning the Merger.

46. Defendants prepared, reviewed, filed and disseminated the false and misleading Proxy to Pinnacle shareholders. In doing so, Defendants knew or recklessly disregarded that the Proxy failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

47. The omissions and incomplete and misleading statements in the Proxy are material in that a reasonable shareholder would consider them important in deciding how to vote their shares. In addition, a reasonable investor would view such information as altering the "total mix" of information made available to shareholders.

48. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Proxy, Defendants were undoubtedly aware of this information and had

previously reviewed it, including participating in the Merger negotiation and sales process and reviewing Evercore's and Credit Suisse's complete financial analyses purportedly summarized in the Proxy.

49. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Merger.

50. Pinnacle is deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

51. Defendants knew that Plaintiff and the other members of the Class would rely upon the Proxy in determining whether to vote in favor of the Merger.

52. As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(a) of the Exchange Act and Rule 14a-9, absent injunctive relief from the Court, Plaintiff and the other members of the Class will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to vote in favor of the Merger.

53. Plaintiff and the Class have no adequate remedy at law.

## COUNT II
### Claim for Violations of Section 20(a) of the Exchange Act
**(Against the Individual Defendants)**

54. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of Pinnacle within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Pinnacle, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the

SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

56. Each of the Individual Defendants were provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Merger. They were thus directly connected with and involved in the making of the Proxy.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons and the acts described herein, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

59. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

60. Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.  Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B.  Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.  Directing the Individual Defendants to disseminate an Amendment to the Company's Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

> COHN LIFLAND PEARLMAN
>  HERRMANN & KNOPF LLP
> *Attorneys for Plaintiff*
>
> BY:   /s/ *Jeffrey W. Herrmann*
>           Jeffrey W. Herrmann
>           Park 80 West-Plaza One
>           250 Pehle Ave., Suite 401
>           Saddle Brook, NJ  07663
>           Phone:  201/845-9600
>           jwh@njlawfirm.com

Dated: August 7, 2018

**OF COUNSEL:**

**WOLF POPPER LLP**
Carl L. Stine
Fei-Lu Qian
845 Third Avenue
New York, New York 10022
Tel.:  212-759-4600
Fax:  212-486-2093
Email: cstine@wolfpopper.com
       fqian@wolfpopper.com

## PLAINTIFF CERTIFICATION
## UNDER THE FEDERAL SECURITIES LAWS

I, Alexander Rasmussen, hereby state:

1. I have reviewed the complaint against Pinnacle Foods Inc. ("Pinnacle") and certain of its directors and officers. I have authorized the filing of a complaint and lead plaintiff motion on my behalf.

2. I am willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

3. I currently own __105__ Pinnacle shares, which I bought on __5/27/18__, at a price of $ __57.5__ per share.

4. I did not purchase these securities at the direction of counsel, or in order to participate in any private action arising under the federal securities laws.

5. During the three-year period preceding the date of signing this certification, I have not sought to serve as a representative party on behalf of a class in any private action arising under the federal securities laws.

6. I will not accept any payment for serving as a representative party on behalf of the Class except to receive a pro rata share of any recovery, or as ordered or approved by the Court, including the award to a representative party of reasonable costs and expenses, including lost wages relating to the representation of the Class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __7__ day of August, 2018

By: _____
Alexander Rasmussen